IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| COLLETTE R. JOHNSON | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| CITY OF PHILADELPHIA and | : | |
| DAWN MIDDLETOWN-BRYANT | : | NO. 08-1894 |

O'NEILL, J.                                                                     September 10, 2009

## MEMORANDUM

Plaintiff Collette Johnson filed a charge of discrimination with the Equal Employment Opportunity Commission on September 11, 2007. On April 22, 2008, she filed a complaint against the City of Philadelphia for violating Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000 e-2(a)(1) (Counts I and II), and against the City of Philadelphia and Dawn Middletown-Bryant for violating her rights under the Fourteenth Amendment pursuant to 42 U.S.C. § 1983 (Counts III and IV). On May 22, 2008, I granted defendants' unopposed motion to dismiss Count II of the complaint, alleging unlawful segregation and classification by the City under Title VII. I have before me defendants' motion for summary judgment on plaintiff's remaining claims and plaintiff's response thereto.

## BACKGROUND

Plaintiff is an adult female formerly employed by the City of Philadelphia Prison System (PPS). She began her tenure with the PPS in 2002 as a correctional officer. She was promoted to correctional sergeant and assigned to the House of Corrections in 2005. Plaintiff remained a sergeant at this location until her termination in April 2009. Her termination is not a subject of this action.

Defendant City of Philadelphia is a municipal corporation formed under the laws of the Commonwealth of Pennsylvania. Defendant Dawn Middletown-Bryant[1] is an African-American adult female currently employed as a correctional captain by the PPS at the House of Corrections. Bryant was plaintiff's shift supervisor from 2005 until plaintiff's transfer to a different shift in December 2007.

Under the official PPS chain-of-command, correctional officers report to sergeants, who report to lieutenants, who report to captains, who report to majors, who report to a facility's Warden, who reports to a deputy commissioner, who reports to the Commissioner. PPS policy requires PPS employees to adhere to this chain-of-command when raising concerns other than union matters. However, Bryant testified in her deposition that, due to a shortage of staff, sergeants occasionally bypass lieutenants and report concerns directly to their captain.

Plaintiff initially alleged that she had been approved in June 2006 for two weeks of vacation in July 2006 but was subsequently "charged" for a day of absence without pay. However, in her deposition, plaintiff admits that she was paid for two weeks but had to use a day of administrative leave because she had not accumulated two weeks of vacation. Plaintiff testified that she was not aware of any similarly-situated person receiving different treatment. However, plaintiff alleges that it was customary to advance employees five vacation days.

Plaintiff alleges that on October 22, 2006 she was denied one day of vacation despite having accrued six hours of vacation time. Plaintiff stated in her deposition that she lacked the full eight hours of accrued time required to take a day off.

---

[1] Although defendant's full name is Dawn Middletown-Bryant, all parties and documents refer to her as Captain Bryant. Therefore I will refer to her solely by the last name Bryant.

Plaintiff alleges that she was put in an insecure situation on October 27, 2006 when asked to supervise a Ramadan dinner of 400 inmates with the assistance of only one other guard. In her deposition, plaintiff adjusted the figure to 160 inmates. Plaintiff further explained in her deposition that she was unsure whether other sergeants had similar staffing during the Ramadan meal. Plaintiff submitted a complaint to her union regarding these staffing concerns. On October 28, 2006, plaintiff was summoned to Warden Darryl Anderson's office where plaintiff alleges the she was "reprimanded, berated and belittled" for her complaint. Plaintiff alleges that her request that a union representative be present for this meeting was denied. Plaintiff alleges that, as a result of Warden Anderson's conduct, she "began to suffer extreme physical and emotional discomfort characterized by hyperventilation, difficulty breathing and anxiety to such an extent that she had to leave work early due to sickness."

Plaintiff alleges that, on or about May 2, 2007, Major Farrel[2] denied her request for a vacation day for May 17, 2007. She alleges that she was ill from May 16 through May 19, 2007, and that, upon her return, she produced a doctor's note corroborating her illness.

In May 2007, while plaintiff was enrolled in courses at Temple University, she was unofficially exempted from mandatory overtime on the days before her classes and on days she had classes. The PPS had customarily extended this courtesy to other correctional officers to encourage continued education. Plaintiff alleges that, on May 30, 2007, Bryant ordered plaintiff to work an overtime shift for which plaintiff would ordinarily have been exempt because it was the day before her class. Bryant alleges that plaintiff had been assigned out of necessity and that no comparable correctional employee was available. Plaintiff did not serve her mandatory

---

[2] A number of corrections officers are referred to only by their last name in the record.

overtime but rather went home because she allegedly felt ill. Plaintiff's exemption from mandatory overtime was terminated on June 13, 2007 while plaintiff was still enrolled in classes. Plaintiff alleges that two other employees, Sergeants Danielle Lynn and Shawn Thornton, were allowed to keep their exempt status.

Plaintiff alleges that Bryant later told plaintiff that she was a "bad supervisor" and should "turn in her stripes" as a result of the incidents on May 30, 2007. Plaintiff alleges that Bryant threatened to "write up" plaintiff if she avoided her mandatory overtime by going home sick.

Following the May 30, 2007 incident, plaintiff was "written up" for failing to provide a timely doctor's note confirming that she had been too sick to work when drafted for the mandatory overtime. Plaintiff alleges that she brought a doctor's note for this date on June 6, 2007. Plaintiff stated that this treatment was inconsistent with the treatment of Sergeant Abraham, a male, who had "[gone] home sick plenty of times and was never written up." Plaintiff had personally "written up" her subordinate Officer Edmunds, a male, because he had gone home sick to avoid mandatory overtime and failed to provide a timely doctor's note confirming his illness.

Plaintiff alleges that she was once reprimanded and twice formally "written up" for breaking the chain-of-command. Plaintiff was "written up" by Lieutenant Erica Patterson on June 27, 2007 for breaking the chain-of-command. The record does not provide any information regarding the reasoning for the June 27, 2007 formal "write-up" beyond its existence. The second instance was related to events which occurred in June 2007 after plaintiff discovered contraband, including bleach and other cleaning supplies, in inmates' cells. The inmates in possession of the contraband informed plaintiff that officers on another shift had given them the

4

contraband cleaning supplies, which were purportedly used to mask the scent of cigarettes. On July 1, 2007, plaintiff sent an e-mail to lieutenants and captains on two shifts but not to her supervisors informing them of her discovery and alleging that specific officers were involved. Plaintiff alleges that, on July 2, 2007, Lieutenant Patterson, plaintiff's direct supervisor, threatened to "write up" plaintiff for breaking the chain-of-command. However, plaintiff does not allege that Lieutenant Patterson actually "wrote up" plaintiff for sending the email regarding the cleaning supplies.

Plaintiff alleges that, on July 2, 2007, Bryant, Major Farrell and other supervisory officers forced Officer Curry to write a memo complaining about plaintiff following an incident in which the cell block D-1 was locked down. She alleges that "either a lieutenant or a captain asked why the block was taken down," that she was only informed of the decision to lock down the cell block by Curry after it was done and that Officer Curry was forced to write a memo stating that plaintiff had told her to lock down the cell block. Bryant claims that Curry had come to her to complain about plaintiff's use of profanity when she spoke to her after the cell block was locked down. Bryant testifies that she told Curry that if she submitted her complaints in writing that she would address them but that Curry never wrote a memo to that effect. Plaintiff admits that she never saw a memo and that she was never reprimanded following this incident.

Plaintiff also alleges that Sergeant Segal sent an email forward to numerous recipients including plaintiff, Bryant and Lieutenant Newton that plaintiff found to be offensive on July 4, 2007. She complained about it to her supervisor but claims that Segal was not disciplined for this and claims that her complaint was ignored because PPS ignores the complaints of female officers. She also claims that if she had sent such an email she would have been disciplined

5

because she is female. Moreover, she claims that she does not send offensive emails.

Plaintiff alleges that she received a second written reprimand on July 9, 2007. Plaintiff, allegedly at the suggestion of Lieutenant Carpenter, wrote to the Commissioner to complain about an incident in which she allegedly felt intimidated by inmates in the prison cafeteria and to suggest that the inmates be separated because she believed they were gang members. Plaintiff alleges that Bryant "publicly berated" her and wrote her up for breaking the chain-of-command with her complaint.

Plaintiff provides two examples of similarly-situated males who allegedly broke the chain-of-command without repercussions. On July 10, 2007, Officer Chad Leonard, a male, wrote an email that broke the chain-of-command to all supervisory staff alleging inappropriate behavior by plaintiff. Plaintiff further alleges that Sergeant Segal broke the chain-of-command when he went directly to a captain to complain that plaintiff had called him an inappropriate name. Plaintiff alleges that neither of these men were reprimanded or "written up" for violating the chain-of-command.

Plaintiff also alleges that she complained to Bryant that Sergeant Segal was punching in the timecard of another employee and Bryant did not reprimanded him thereafter. Plaintiff asserts that if she had committed the same offense she would have been treated differently.

Plaintiff also provides one example involving leave approval where she alleges that she was treated differently than a male employee. On October 12, 2007, Major Porter denied plaintiff's request for emergency administrative leave to take care of a "child-care emergency." Plaintiff alleges that the stated reason for the denial was that "it would cause someone else to have to work overtime." Plaintiff alleges that Major Porter approved similar leave on November

7, 2007 for Sergeant McDaniels, a male, despite the fact that "such leave allowance caused someone else to have to work overtime."

Plaintiff claims that, as a result of the alleged disparate treatment, she "suffered a loss of professional statute [sic] and opportunity."

STANDARD OF REVIEW

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). An issue of material fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). Summary judgment will be granted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The party moving for summary judgment has the burden of demonstrating that there are no genuine issues of material fact. Id. at 322-23. If the moving party sustains the burden, the nonmoving party must set forth facts demonstrating the existence of a genuine issue for trial. See Anderson, 477 U.S. at 255.

When a properly supported motion for summary judgment is made, "an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). The adverse party must raise "more than a mere scintilla of evidence in its favor" in order to overcome a summary

judgment motion and cannot survive by relying on unsupported assertions, conclusory allegations, or mere suspicions. Williams v. Borough of W. Chester, 891 F.2d 458, 460 (3d Cir. 1989). However, the "existence of disputed issues of material fact should be ascertained by resolving all inferences, doubts and issues of credibility against" the moving party. Ely v. Hall's Motor Transit Co., 590 F.2d 62, 66 (3d Cir. 1978), citations and quotation marks omitted.

DISCUSSION

I.    Title VII Claim

Plaintiff's Title VII claim (Count I) alleges that the City engaged in the disparate treatment of male and female PPS employees.[3] The City asserts that plaintiff's Title VII claim involves incidents that are time-barred by the statute of limitations and that all plaintiff's Title VII claims fail because plaintiff fails to establish a prima facie case.

A.    Statute of Limitations

The City moves for summary judgment on all Title VII claims related to events that took place before November 17, 2006 as time-barred. Plaintiff asserts that these claims are not time-barred as all the incidents described in the complaint form one "continuing violation" of Title VII because there is "a continual, ongoing pattern of Employee Violations."

A plaintiff must file a charge of employment discrimination with the EEOC prior to seeking relief on those claims in federal court. 42 U.S.C. §§ 2000e-5(b), (f). The charge of discrimination must be filed within 180 days of the alleged unemployment practice or within 300 days if the claim is made in a state that has an entity with the authority to grant or seek relief with

---

[3] In her response to the motion for summary judgment plaintiff asserts claims of retaliation. However, as these allegations do not appear in the complaint, I will not consider them.

respect to the alleged employment discrimination. 42 U.S.C. § 2000e-5(e)(1). Pennsylvania has a 300-day filing period. Watson v. Eastman Kodak Co., 235 F.3d 851, 854 (3d Cir. 2000). Plaintiff's EEOC complaint was filed on September 11, 2007. This places events occurring before November 17, 2006, the claims relating to vacation time that plaintiff did not receive in June 2006 and the verbal reprimand that plaintiff received on October 28, 2006 for complaining about staffing during the Ramadan meal, outside the statutory period.

However, claims can be retained if it can be demonstrated that they are part of a continuing violation. "To prevail on a continuing violation theory [] the plaintiff must show more than the occurrence of isolated or sporadic acts of intentional discrimination. The preponderance of the evidence must establish that some form of intentional discrimination of which plaintiff was a member was the company's 'standard operating procedure.'" Jewett v. Int'l Tel. & Tel. Corp., 653 F.2d 89, 91-92 (3d Cir. 1981).

The Supreme Court addressed a similar case in AMTRAK v. Morgan, 536 U.S. 101 (2002). In Morgan, an African-American employee claimed that multiple disciplinary acts formed a continuing practice of racial discrimination. Id. at 105-06. The Court of Appeals for the Ninth Circuit found that these disciplinary measures formed a continuing violation. Id. at 107. However, the Supreme Court reversed, finding that "[e]ach incident of discrimination and each retaliatory adverse employment decision constitutes a separate actionable unlawful employment practice. [Plaintiff] can only file a charge to cover discrete acts that occurred within the appropriate time period." Id. at 114. However, in a hostile environment claim, which plaintiff has not alleged here, the "'unlawful employment practice' therefore cannot be said to occur on any particular day. It occurs over a series of days or perhaps years and, in direct contrast

to discrete acts, a single act of harassment may not be actionable on its own." Id. at 115.

Plaintiff has not provided any evidence that discrimination on the basis of gender was the "standard operating procedure" in the PPS nor has she claimed that she experienced a hostile work environment at the PPS. She has instead pointed to discrete instances in which she alleges that she was the victim of sex discrimination, the majority of which, as discussed below, do not give rise to an inference of sex discrimination. The incidents behind her "Employee Violations" that she claims support a continuing violation are each factually distinct actions across the employment spectrum, ranging from denial of leave requests to reprimands for violating the chain-of-command. These alleged violations are not sufficiently linked to be considered a continuing violation.

Because plaintiff has alleged discrete acts of discrimination rather than a continuing violation, incidents occurring before the 300-day statutory limit are time-barred. Thus, I will grant defendants' motion for summary judgment on all Title VII claims occurring before November 17, 2006.

### B. Prima Facie Case

City moves for summary judgment on all of plaintiff's remaining Title VII claims against it. Plaintiff's remaining Title VII claims allege that plaintiff was treated differently or would be treated differently than similarly-situated males for: (1) vacation requests; (2) failing to produce a timely doctor's note; (3) overtime exemption status, (4) emergency administrative leave requests, (5) timecard violations; and (6) violating the chain of command.

The framework for establishing a claim of disparate treatment under Title VII was set

forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).[4]  Plaintiff has the initial burden of proving a prima facie case of disparate treatment.  Id. at 802.  Plaintiff must provide evidence of four elements:  (1) she is a member of a protected class; (2) she was qualified for the position; (3) she suffered an adverse employment action; and (4) that the adverse employment action occurred under circumstances that give rise to an inference of unlawful discrimination.  Texas Dep't of Cmty. Affairs v. Burdline, 450 U.S. 248, 253 (1981).  The City disputes only the fourth element in this motion, claiming that Johnson has failed to establish a prima facie case of disparate treatment because she has not provided evidence that the adverse employment actions she claims to have suffered occurred under circumstances that give rise to an inference of unlawful discrimination.

An inference of unlawful discrimination can be established by showing that the employer treated a similarly-situated employee who is not within the plaintiff's protected class differently from plaintiff.  Jones v. Sch. Dist. of Phila., 198 F.3d 403, 410-11 (3d Cir. 1999).  To demonstrate unequal treatment, the plaintiff must "set forth evidence to establish that [s]he was treated differently from . . . [her] coworkers for similar disciplinary infractions."  Nicholson v. Bradley Graphic Solutions, Inc., 2004 WL 870692, at *4 (E.D. Pa. Apr. 22, 2004), quoting Davis v. City of Phila. Water Dep't, 2001 WL 1390750, at *3 (E.D. Pa. Nov. 7, 2001).  "To be deemed 'similarly situated,' the individuals whom a plaintiff seeks to be compared must 'have engaged in

---

[4]  Johnson has also claimed that we should consider her claims in the context of the "mixed-motives" line of cases which began with Price Waterhouse v. Hopkins, 490 U.S. 228 (1989).  However, a "mixed-motives" theory requires evidence "so revealing of discriminatory animus that it is not necessary to rely on the presumption from the prima facie case to shift the burden of production."  Buchsbaum v. Univ. Physicians Plan, 55 Fed. Appx. 40, 45 (3d Cir. 2002).  Plaintiff has failed to allege or provide evidence of discriminatory animus.

the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or their employer's treatment of them for it.'" Kimble v. Morgan Prop., 2004 WL 2536838, at *3 (E.D. Pa. Nov. 8, 2004), quoting Anderson v. Haverford Coll., 868 F. Supp. 741, 745 (E.D. Pa. 1994), internal citations omitted. The fourth element can also be established by showing "other circumstances that give rise to an inference of unlawful discrimination." Senador v. Zober Indust., Inc., 2009 WL 1152168, at *4 (E.D. Pa. Apr. 28, 2009). Examples of "other circumstances" include discriminatory comments made by a supervisor with decision-making authority and a showing that a sought-after position remained open after the defendant employer rejected the plaintiff's application. Sarullo v. U.S. Postal Serv., 352 F.3d 789, 798 (3d Cir. 2003); Greene v. Turf Club Serv., Inc., 2000 WL 19624, at *3 (E.D. Pa. Jan. 13, 2000).

Plaintiff has attempted to establish her prima facie case of disparate treatment solely by pointing to incidents in which she believes that similarly-situated employees were treated differently than her. I will examine each of the incidents to which plaintiff refers.[5]

Plaintiff alleges that, on or about May 2, 2007, she was denied a request for a vacation day for May 17, 2007. While she claims that she was denied a vacation day, she claims that she was ill from May 16-May 19, 2009 and produced a doctor's note to that effect. Plaintiff fails to assert what her claim is with regard to this issue and further fails to allege that any similarly-situated male was treated differently under the same circumstances. Thus, the denial of the May

---

[5] The two claims which are time-barred, the claims relating to vacation time that plaintiff did not receive in June/July 2006 and the verbal reprimand that plaintiff received on October 28, 2006 for complaining about staffing during the Ramadan meal, could still be considered as evidence for building a prima facie case of discrimination. Morgan, 536 U.S. at 113. However, plaintiff has not pointed to similarly-situated males who were "fronted" vacation time or who made complaints about the Ramadan meal but were not reprimanded. Thus, these incidents do not support her claim of disparate treatment.

17, 2007 vacation day does not give rise to an inference of unlawful discrimination.

Plaintiff alleges that she was unfairly drafted to work overtime, that she was unable to work on May 30, 2007 and that she was unfairly reprimanded for a subsequent failure to produce a timely doctor's note explaining her absence. There is no evidence that any similarly-situated male employees were granted overtime exemptions when plaintiff was not. Plaintiff alleges that Sergeant Abraham was able to go home sick and was not reprimanded. However, plaintiff's reprimand was based on her failure to turn in a timely doctor's note rather than for going home sick. There is evidence that it was common practice to write-up employees who failed to provide timely doctor's notes for days they were home sick, including occasions in which plaintiff wrote up her subordinates for this same infraction. Plaintiff does not allege that Sergeant Abraham failed to provide a timely doctor's note. Thus, the actions of plaintiff's supervisors with regard to this matter do not give rise to an inference of unlawful discrimination.

Plaintiff alleges that she lost her exemption from overtime in June 2007 but that two other employees were allowed to keep their exemption. However, there is no evidence as to why plaintiff lost this status or that either of the employees, Sergeants Lynn and Thornton, had been reprimanded for going home sick during an assigned overtime and failing to provide a timely doctor's note if that was the reason that plaintiff lost her status. Moreover, Sergeant Lynn is a female employee and is therefore part of the same protected class as plaintiff. Thus, plaintiff's loss of overtime exempt status does not give rise to an inference of unlawful discrimination.

Plaintiff alleges that, on July 2, 2007, Bryant, Major Farrell and other supervisory officers had forced another correctional officer, Officer Curry, to write a memo complaining about plaintiff following an incident in which the cell block D-1 was locked down. However, she

admits that she has not seen the alleged memo and Bryant asserts that it was never written. As there is no evidence that the memo existed and plaintiff admits that she did not receive a reprimand related to this incident, plaintiff has no basis for this claim.

Plaintiff also alleges that Sergeant Segal was not disciplined for sending an offensive email forward on July 4, 2007 about which plaintiff had complained because the PPS ignores the complaints of female officers. She also asserts that if she had written an offensive email she would have been disciplined because she was female. As plaintiff claims that she does not send offensive emails, she has no evidence that she was treated differently than similarly-situated male officers and any such claim is pure speculation. Additionally, she admits that both male and female officers have been disciplined and suspended for emails but does not know of the content of the emails that triggered disciplinary action. Because she has presented no evidence of the content of the emails that have triggered disciplinary action, it is unclear whether this email was sufficiently offensive to require discipline and therefore provides no evidence that her complaint was ignored, much less that it was ignored because of her gender. Because both male and female officers have been disciplined for emails and because she has not sent any offensive emails herself and so has no evidence that she has been treated differently, this claim does not give rise to an inference of unlawful discrimination.

Plaintiff also alleges that her request for emergency administrative leave on October 12, 2007 was not granted but that of Sergeant McDaniels, a male, was granted on November 7, 2007. However, plaintiff has not provided evidence that Sergeant McDaniels was a similarly-situated employee. Plaintiff is unaware of the reason for Sergeant McDaniels' request and whether it was similar to her request for leave for child-care reasons. Plaintiff fails to provide any example of a

similarly-situated male who was granted emergency administrative leave for child care reasons. This claim, therefore, fails to give rise to an inference of unlawful discrimination.

Plaintiff also alleges that Sergeant Segal punched the timecard for another employee and she believes that if she had committed the same offense she would have been treated differently. This is pure speculation and is not evidence of unlawful discrimination.

Finally, plaintiff alleges that she was reprimanded for violating the chain-of-command when making a complaint but that males were not reprimanded when they similarly made complaints in violation of the chain-of-command. Plaintiff was reprimanded on three separate occasions for violating the PPS chain-of-command policy. Plaintiff received a written reprimand on June 27, 2007 for breaking the chain-of-command when filing a complaint, but the record does not indicate what incident triggered that complaint or reprimand. On July 2, 2007, plaintiff received a verbal reprimand following a blanket e-mail that she sent to all prison supervisors complaining about prison personnel leaving bleach in prisoners' cells. Plaintiff received a written reprimand for violating the chain-of-command on July 9, 2007 for a complaint that she sent directly to the Commissioner relating to an incident in the prison cafeteria during which plaintiff alleges that she felt threatened by gang members.

Plaintiff provides two examples of males who made similar complaints outside the chain-of-command and were not reprimanded. Bryant admits that Officer Leonard was not reprimanded for e-mailing a complaint to all supervisory staff on July 10, 2007. Plaintiff also alleges that Sergeant Segal broke the chain-of-command when complaining to a captain rather than to his supervising lieutenant that plaintiff had called him an inappropriate name and he did not receive a reprimand. However, Bryant's deposition testimony creates a dispute as to whether

complaint to a captain rather than to a lieutenant violates the chain-of-command.

Thus, plaintiff has pointed to similarly-situated males who did not suffer the same adverse employment actions she did for a similar infraction related to a complaint violating the chain-of-command. This creates a prima facie case of disparate treatment related to these incidents. The City has the opportunity to rebut plaintiff's prima facie case by providing a non-discriminatory reason for why plaintiff was treated differently with regard to these infractions but it has yet to do so. McDonnell Douglas, 411 U.S. at 802. Therefore, I will deny defendants' motion for summary judgment for the Title VII claim against the City with regard to plaintiff's claims involving violations of the chain-of-command and grant it for all other claims.

  II.  Section 1983 Claims

In Count III of the complaint, plaintiff alleges that the City violated her Fourteenth Amendment right to equal protection under § 1983. In Count IV of the complaint, plaintiff alleges that Bryant and the City, as her alter ego, violated her Fourteenth Amendment right to equal protection under § 1983. Defendants argue that plaintiff has not alleged a policy or custom to attach municipal liability to the City and that plaintiff has failed to state a prima facie claim under § 1983 for either defendant.

  A.  Municipal Liability § 1983 Claim Against City

Plaintiff alleges that the City violated her constitutional rights by having an official policy of discrimination against female PPS employees (Counts III and IV). She claims that the policy is one of "entertaining only with great reluctance and suspicion complaints of discrimination brought by female correctional officers, while minifying their complaints of the same." She also

alleges that the City failed to train Bryant "concerning sex and disability discrimination."[6]  The City claims that plaintiff has failed to provide any proof of an official policy or custom or of any action by a municipal policymaker.

"Municipal liability attaches only 'when execution of government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury complained of.'"  Robinson v. City of Pittsburgh, 120 F.3d 1286, 1295 (3d Cir. 1997), quoting Monell v. Dept. of Soc. Servs., 436 U.S. 658, 694 (1978).  The Court of Appeals has stated that:

> A government policy or custom can be established in two ways.  Policy is made when a "decisionmaker possess[ing] final authority to establish municipal policy with respect to the action" issues an official proclamation, policy or edict.  Pembaur v. City of Cincinnati, 475 U.S. 469, 481 (1986).  A course of conduct is considered to be a "custom" when, though not authorized by law, "such practices of state officials [are] so permanent and well-settled" as to virtually constitute law.

Andrews v. City of Phila., 895 F.2d 1469, 1480 (3d Cir. 1990), citing Monell, 436 U.S. at 690, quoting Adickes v. S.H. Kress & Co., 398 U.S. 144, 167-68 (1970).  A municipal policy is established by producing evidence of "a policy statement, ordinance, regulation or policy decision officially adopted and promulgated by [the local governing body's] officers."  Monell, 436 U.S. at 690.  "An isolated incident or series of incidents will not suffice to establish a municipal custom that is sufficiently permanent and well-settled to virtually constitute law."  King v. City of Phila., 2002 WL 1277329, at *16 (E.D. Pa. June 4, 2002).

At the summary judgment stage, the nonmoving party must "set forth specific facts

---

[6] There is no further mention of a claim of discrimination on the basis of disability in the complaint or the record and therefore it will not be considered.

showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e).[7] Plaintiff therefore must produce facts supporting the existence of either a municipal policy or custom. Patrick v. Great Valley Sch. Dist., 296 Fed. Appx. 258, 262-63 (3d Cir. 2008).

Regardless of whether plaintiff may have implicated a municipal policymaker by alleging in her complaint that Warden Anderson[8] and Bryant were involved in the decisions to discipline her, plaintiff has not provided evidence of a municipal policy or custom. Although plaintiff has alleged a policy, she has not provided any evidence of the policy. Nor has she produced evidence of a custom "so permanent and well settled as to virtually constitute law." Andrews, 895 F.2d at 1480. Plaintiff has at best pointed to two incidents of disparate treatment involving reprimands for violating the chain-of-command. This is not enough evidence to find that there is a policy or custom of sexual discrimination in the PPS. See King, 2002 WL 1277329, at *16.

Plaintiff's claim against a municipality under § 1983 cannot withstand a motion for summary judgment when she fails to offer evidence of a municipal policy or custom. Patrick, 296 Fed. Appx. at 262-63. I will therefore grant the City's motion for summary judgment on all

---

[7] Johnson asserts in her response to the motion for summary judgment that at this stage in the litigation I must accept all of her pleadings as true. This is not true at the summary judgment stage. The case she cites for this proposition, Celotex, stands for exactly the opposite proposition. "Rule 56(e) permits a proper summary judgment motion to be opposed by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves . . . ." Celotex, 477 U.S. at 324.

Moreover, in the future, references such as "Celotex v. Catrett, supra" are of little assistance in discerning why counsel is citing to a particular case.

[8] See Thornton v. City of Phila., 2005 WL 2716484, at *3 n.5 (E.D. Pa. Oct. 25, 2005), holding that the question of whether a Warden in the PPS was a policymaker for the purposes of establishing municipal liability under § 1983 was a "genuine issue of material fact."

of plaintiff's claims pursuant to § 1983 (Counts III and IV) against the City.[9]

          B.     Prima Facie § 1983 Claim Against Bryant

Plaintiff alleges that Bryant violated her Fourteenth Amendment right to equal protection under § 1983 (Count IV). Defendants claim that plaintiff has failed to establish a prima facie case under § 1983.

The standard for evaluating prima facie claims of discriminatory action under § 1983 is the same as the standard applied for evaluating prima facie claims of disparate treatment under Title VII. St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 509 (1993); Stewart v. Rutgers, The State Univ., 120 F.3d 426, 432 (3d Cir. 1997). Since I have already decided that a prima facie case exists under Title VII for incidents involving reprimands for violating the chain-of-command, I similarly find that a prima facie case exists for these incidents under § 1983. I will therefore deny defendants' motion for summary judgment for plaintiff's § 1983 claims against Bryant related to the reprimands for violating the chain-of-command and grant it for all other incidents alleged in the claim.

An appropriate Order follows.

---

[9] As I am granting defendants' motion to dismiss plaintiff's § 1983 claim against the City on other grounds, I need not consider whether plaintiff sufficiently pled a prima facie claim against the City.